UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAMONE LAUDERDALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02684-TWP-TAB |
| | ) |
| WILLIAM RUSSELL (Deputy), DEVON | ) |
| CLARK (Deputy), THOMAS WILLIAMS | ) |
| (Corporal), and STREET (Deputy), | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants William Russell ("Deputy Russell"), Thomas Williams ("Corporal Williams"), Devon Clark ("Deputy Clark"), and Jeremy Street ("Deputy Street") (collectively, "the Defendants") (Filing No. 131). Plaintiff Lamond Lauderdale, ("Lauderdale"), initiated this action against the Defendants in their individual and official capacities, as deputies of the Marion County Sheriff's Office, alleging that while housed in the Marion County Jail, he was assaulted by the Defendants, retaliated against and denied proper medical treatment in violation of 42 U.S.C. § 1983 and under Indiana State law. (Filing No. 1.) On May 28, 2019, the Defendants filed a Motion for Partial Summary Judgment, contending that Lauderdale cannot prevail on his official capacity claims. (Filing No. 133.) Lauderdale did not respond to the Motion and the time to do so has expired. For the following reasons, the Court **grants** the Defendants' Motion for Partial Summary Judgment.

# I. LEGAL ANALYSIS

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## II. FACTUAL BACKGROUND

As the non-moving party, the Court must construe all factual disputes and draw all reasonable inferences in favor of Lauderdale. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The movant has appropriately asserted facts based on Lauderdale's version of the events. The Court notes that Lauderdale's failure to respond to the Defendants' Motion means the Court must treat the movant's version of the facts as uncontested. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Childress v. Experian Info. Servs.*, 2014 Lexis 103738, 9-11 (S.D. Ind. 2014) (J. Pratt); S.D. Ind. Local R. 56-1(f) ("[i]n deciding a summary judgment motion, the court will assume that the facts as claimed by admissible evidence by the movant are admitted without controversy except to the extent that the non-movant specifically controverts the facts in that party's "Statement of Material Facts in Dispute" with admissible evidence") (internal citations omitted).

**A**. **The Assault**

All inmates of the Marion County Jail I receive a copy of the inmate handbook and are informed that they may not place items over the light fixture in their cells. ([Filing No. 132-2 at 1](Filing No. 132-2 at 1)). "Placing items on the bars, bunks, or light fixtures, which obstruct the view" are considered security concerns. *Id*. Security concerns, include but not limited to, "covered windows and lights, and [should] be noted [by deputies] during clock rounds." ([Filing No. 133 at 2](Filing No. 133 at 2)).

In August 2015, Lauderdale was an inmate at the Marion County Jail I. On August 28, 2015, he returned to his cell by 11:00 p.m. and eventually fell asleep. In the early morning hours of August 29, 2015, Deputy Russell was performing a clock round, in which deputies are required

to "be aware of inmate/detainee activity in any cell and/or unit" and to observe any security concerns. (Filing No. 133 at 2.) Deputy Russell entered Lauderdale's cell during clock rounds and as required, removed some clothing that was covering the light fixture.

A few hours later, again during clock rounds, Deputy Russell returned to Lauderdale's cell with Corporal Williams and noticed clothing again covering the light fixture. Deputy Russell asked Lauderdale "to take the clothing off the light." (Filing No. 132-1 at 16.) Lauderdale refused, and responded, "the clothing [i]s not mine so I [am] not going to remove it." *Id.* at 16-17. Lauderdale and Deputy Russell "got into a verbal argument at that time." *Id*. at 17. Deputy Russell attempted to take Lauderdale into custody, but Lauderdale refused to comply. Eventually Lauderdale allowed Deputy Russell to handcuff him and Deputy Russell escorted Lauderdale out of the cell. The altercation then turned physical. *Id*. at 25. Lauderdale had pressure applied to his neck, was almost run into a wall, and received an uppercut punch and a knee to his face. *Id*. Thereafter, Deputy Russell, accompanied by other deputies, continued to escort Lauderdale to the other side of the jail. As they were walking, Lauderdale got into a second verbal altercation—this time with Deputies Russell and Clark. *Id*. at 32-33. When they arrived at the other side of the jail, Lauderdale "felt the bottom of [his] pants get tucked and pressure was applied to [his] upper body" as he was driven into the wall. *Id*. at 34-35. He was dropped on the ground and then "immediately started feeling impacts from blows on [his] body." *Id*. at 36, 42. He remembers being taken to a holding cell and requested medical assistance but was refused. A few hours later, Deputy Street escorted him back to his original cell. *Id*. at 54-55. He again requested medical assistance, but was denied.

Lauderdale spoke to a nurse during the medication pass around noon that day who informed him "to put in a health care request[,]" which he did not do. (Filing No. 132-1 at 56-57, 61-62.)

4

He was examined by another nurse during the regular medication pass a few hours later, at which point he was given a bottom bunk pass and informed that he was scheduled to see the doctor in a couple of days. Lauderdale was seen by a doctor "three or four days after the actual incident. *Id*. at 65. "[T]he results of the initial x-rays … were negative." *Id*. at 66. Nevertheless, Lauderdale was given ibuprofen and an injection to help put on a neck brace. The August 29, 2015 incident was the only incident of physical assault that Lauderdale experienced while at the Marion County Jail I.

**B.     Deputy Training**

Sherriff's deputies have a responsibility for the reasonable safety of all prisoners in their custody. (Filing No. 132-9 at 6.) And Sheriff's deputies "shall not willingly … endanger the life or limbs of another person." *Id.* at 4. Accordingly, all Marion County Jail I Sheriff's deputies are trained on the use of force when interacting with those housed in the Marion County Jail I. (Filing No. 132-2 at 2.) This training "examine[s] the use of force and allow[s] Deputies to make appropriate choices in the degree of force to use in a given situation." (Filing No. 132-9 at 8.) This enables the deputies to assess a situation and make the necessary determination the degree of force reasonably needed to exercise the requisite control. (Filing No. 132-9 at 10.) "The critical aspect in determining the objective reasonableness of the Deputies' actions is what he/she knew when force was applied as opposed to what facts or circumstances come to light when the incident is investigated." *Id*. at 8.

"The policies and procedures for inmates and Sheriff's deputies at the Marion County Jail are designed to protect the constitutional rights of all inmates being housed in the facility." (Filing No. 132-2 at 1.) Deputies are prohibited from "willingly, by act, by omission, or by neglect, endanger[ing] the life or limbs of another person." (Filing No. 132-9 at 4.) Deputies are also

5

mandated to "carry out all lawful orders given them by supervisors, or ranking Deputies, in the line of duty." (Filing No. 132-9 at 5). "Sheriff's Deputies shall not obey any order that they know, or should know, would require them to commit an illegal act." *Id*.

Deputies at the Marion County Jail I must also abide by ethical standards of conduct established by the City-County Council, which are outlined in Chapter 293 of the Revised Code of the Consolidated City and County. Furthermore, Sheriff's deputies are required to "thoroughly familiarize himself with the provisions in the Department Rules and Regulations" and "conform to and abide by all rules and regulations, orders, special orders, policies, procedures, and division directives issued by the Marion County Sheriff." (Filing No. 132-9 at 3.)

Deputies are also "held responsible for compliance with rules and regulations, orders, special orders, policies, procedures, division directives and their performance of duty." *Id*. Marion County Jail I does not have an express policy of prohibiting deputies from protecting inmates from employee assaults against inmates housed in the facility. *Id*. at 1, 2. Marion County Jail I does not have an express policy encouraging deputies to be deliberately indifferent to the serious medical needs of inmates housed in the facility. (Filing No. 133 at 7.) Marion County Jail I does not have an express policy of encouraging deputies to retaliate against inmates housed in facility. To the contrary, the rules and regulations at the Marion County Jail forbid deputies from using excessive force and retaliating against inmates. *Id.* These rules are designed to protect inmates from assaults and require deputies to take action when inmates are in need of immediate medical care.

### III.    DISCUSSION

Lauderdale alleges that Deputy Russell violated his rights by using excessive force in violation of Indiana common law and 42 U.S.C. § 1983; he alleges that Deputy Russell, Corporal Williams, Deputy Clark, and Deputy Street retaliated against him in violation of his First

6

Amendment Rights; Corporal Williams and Deputy Clark assaulted him in violation of 42 U.S.C. § 1983 and in contravention of Indiana common law; Corporal Williams and Deputy Clark failed to protect him from Deputy Russell's excessive force in violation of Indiana common law and 42 U.S.C. § 1983; Corporal Williams and Deputy Clark failed to protect him from assault in violation of Indiana common law and 42 U.S.C. § 1983; and all of the Defendants were deliberately indifferent to his need for medical attention after the alleged use of force in violation of Indiana common law and 42 U.S.C. § 1983.

The Defendants assert that they are entitled to summary judgment on Lauderdale's official capacity claims only, because he cannot prove a widespread practice of using excessive force, failing to protect inmates, showing deliberate indifference to inmates' serious medical needs, and/or retaliation against inmates to warrant a trial on these claims.

"A suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the municipal entity." *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 937 (S.D. Ind. 2013). "Since an official capacity suit is 'simply another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), precedent establishes that the Court should "treat Plaintiff's complaint in all respects as a claim against the [Consolidated] City of Indianapolis [and Marion County]." *Smith*, 975 F. Supp. 2d at 937–38. Thus, Lauderdale's Section 1983 claims against the Defendants are evaluated under the mandates of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

In *Monell*, the United States Supreme Court "conclud[ed] that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691. In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or

agents." *Id*. at 694. Rather, in order to establish governmental liability, the plaintiff bears the burden of producing evidence sufficient to show:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'

*Estate of Crouch v. Madison Cty.,* 682 F. Supp. 2d 862, 877 (S.D. Ind. 2010) (quoting Lewis v. City of Chicago, 496 F.3d 645, 656 (7th Cir. 2007))). Defendants argue that Lauderdale cannot meet any of these requirements. According to the Defendants, there is no "express policy that, when enforced, causes a constitutional deprivation[,]" *Estate of Crouch*, 682 F. Supp. 2d at 877, such as those claimed by Lauderdale.

It is undisputed that there is no express policy of permitting the use of excessive force against inmates housed in the Marion County Jail 1 facility. And, there is no express policy prohibiting deputies from protecting inmates from employee assaults against inmates housed in the facility. To the contrary, the express policy prohibits the use of excessive force.

By his own testimony, Lauderdale concedes that there was only a single incident of alleged misconduct that occurred in the early morning hours of August 29, 2015. He does not dispute that the express policies of the Marion County Jail I forbid deputies from using excessive force. Nor does he dispute that Marion County Jail I rules and regulations subject employees to disciplinary action for using inappropriate levels of force against inmates.

In order to find municipal liability, "there must be an affirmative link between the policy and the particular constitutional violation alleged." *Palmer v. Marion Cnty.,* 327 F.3d 588, 594 (7th Cir. 2003) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). But no such link is present here. Instead, here there was one isolated incident of alleged misconduct and

Defendants have an express policy of ensuring Lauderdale's safety. In addition, there is no evidence to show that Lauderdale was denied medical assistance in retaliation for his claims against Defendants. Because there is no evidence to substantiate municipal liability under 42 U.S. § 1983, the Defendants are entitled to summary judgment on Lauderdale's official capacity claims.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Summary Judgment ([Filing No. 131](#)), is **GRANTED**.

**SO ORDERED.**

Date: 9/24/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel Kyle Dilley
DILLEY & OAKLEY, P.C.
d.dilley@dilley-oakley.com

Robert M. Oakley
DILLEY & OAKLEY, P.C.
firm@dilley-oakley.com

Andrew Scheil
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
andrew.scheil@indy.gov

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
traci.cosby@indy.gov